**DUANE MORRIS LLP**
A Delaware Limited Liability Partnership
By:     Christopher L. Soriano, Esq.
        1940 Route 70 East, Suite 200
        Cherry Hill, New Jersey 08003
        (856) 874-4200
        csoriano@wolfblock.com


**PUBLIC INTEREST LAW CENTER OF PHILADELPHIA**
By:     Judith A. Gran, Esq. (admitted *pro hac vice*)
        125 S. Ninth Street, Suite 700
        Philadelphia, PA 19107
        (215) 627-7100
        judygran@aol.com

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **D.B.** and **L.B.**, o/b/o **H.B.**, | : | |
| *Plaintiffs*, | : | Civ. A. No. 08-cv-05667-JEI-KMW |
| *v.* | : | |
| | : | |
| **Gloucester Township School District**, | : | |
| | : | |
| and | : | **[PROPOSED] AMENDED** |
| | : | **COMPLAINT – CIVIL ACTION** |
| **Thomas D. Seddon**, in his official capacity | : | |
| as the Superintendent of Schools of the | : | |
| Gloucester Township School District; | : | |
| | : | |
| **John Tighe**, individually and in his official | : | |
| capacity as the Director of Special Services | : | |
| of the Gloucester Township School District; | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

**AMENDED CIVIL ACTION COMPLAINT**

**Preliminary Statement**

1.      Plaintiff H.B. is an eight year old child and a student in the Gloucester Township

School District.  She brings this action through her parents, D.B. and L.B., seeking redress from

the defendants' decision to place her in a segregated special education classroom rather than providing special education services in a regular education environment.  This complaint is brought pursuant to the Individuals with Disabilities Education Act ("IDEA") and other federal and state statutes, seeking placement in a legally correct educational environment that enables her to be educated with typically developing peers to the maximum extent appropriate and to be included in all nonacademic and extracurricular activities.  This action also seeks a remedy for the time where H.B. has been denied a free, appropriate public education in the past.

2.      H.B.'s parents have advocated in favor of her ability to participate for academic and social purposes in the general education environment, using appropriate supplemental aids and services.  For the time when H.B. was in kindergarten, this participation took place in a satisfactory manner.  However, inexplicably, in the spring of 2007, the defendants did an about-face and determined that H.B. would not receive any of her academic education in the regular education environment.

3.      H.B.'s parents filed a request for due process and invoked the "stay-put" provisions of the IDEA, thus entitling her to one hour per day of regular education during the 2007-2008 school year.  The defendants refused, however, to provide H.B. with any additional supplemental aids and services during that hour, notwithstanding the fact that these supplemental aids and services were provided during the remainder of the school day.

4.      The due process proceedings were protracted, due in large part to numerous attempts by the assigned Administrative Law Judge to settle the matter.  The matter did not proceed to hearing until May 2008, where a newly assigned Administrative Law Judge directed that before the hearing could continue, a new IEP meeting must take place to determine the IEP for the 2008-2009 school year.

5.      That IEP provided H.B. with only twenty minutes of mathematics education and twenty minutes of language arts education in the regular education environment.  The mathematics class typically proceeds for one hour, while the language arts class typically proceeds for ninety minutes.

6.      After a seven-day administrative hearing, the Administrative Law Judge found that the plaintiffs were not entitled to relief.  A copy of that decision is attached as Exhibit A.

7.      Plaintiffs file this action pursuant to 20 U.S.C. § 1415(i)(2) to appeal the decision of the Administrative Law Judge. They have fully exhausted her administrative remedies as required by the IDEA, 20 U.S.C. § 1415(f) and (g).  Plaintiffs ask this Court to order the defendants to develop a new Individualized Education Program for her that will enable her to be educated in the regular education classrooms of the defendants, to be educated with children who do not have disabilities to the maximum extent appropriate, to receive appropriate supplementary aids and services, and to receive a meaningful educational benefit.  In addition, plaintiffs seek a remedy in the form of compensatory education commensurate with their failure to provide a free, appropriate public education for H.B. over the last two years.

8.      During the pendency of this case in this Court, defendants prepared an IEP for H.B. for the 2009-2010 school year.  That IEP provides that H.B. is to spend no time with typically developing peers for academic instruction, instead receiving all of her academic instruction in the district's segregated Autism Program.  That IEP was also developed through a procedurally flawed process.  Plaintiffs seek redress for these procedural and substantive flaws.

**JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction over the matter pursuant to 28 U.S.C. §§ 1331 and 1343 and 20 U.S.C. § 1415(i)(3)(A) and (B), and over pendent and ancillary state law claims pursuant to 28 U.S.C. § 1367.

10.      Plaintiffs' cause of action arises under 20 U.S.C. § 1401 et seq., 29 U.S.C. § 794, 42 U.S.C. §§ 12161-12165, and 42 U.S.C § 1983.

11.      This Court has personal jurisdiction over the defendants because each defendant is an agency of, resides in, and/or transacts its business within the State of New Jersey.

12.      Venue is proper in this district because all defendants reside within this judicial district and a substantial part of the events giving rise to the claim occurred within this judicial district pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

13.      Plaintiff H.B. was born on June 28, 2000, and is a "child with a disability" within the meaning of IDEA, 20 U.S.C. § 1402(3)(A), and a "qualified individual with a disability" within the meaning of § 504 of the Rehabilitation Act, 29 U.S.C. § 705(20), and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(2).

14.      H.B. has been diagnosed with autism.

15.      H.B.'s eligibility for special education and related services is not the subject of a dispute by or between any party.

16.      Defendant Gloucester Township School District is an educational agency with its offices at 17 Erial Road, Blackwood, New Jersey 08012.  Defendant is responsible for providing special education services to students with disabilities who reside in the district.  The defendant is a "program or activity" receiving federal financial assistance under the Rehabilitation Act of

4

1973, 29 U.S.C. § 794(b)(2)(B).  The defendant is also a "public entity" under the Americans with Disabilities Education Act, 42 U.S.C. § 12131(1).

17.     As a Local Educational Agency (LEA) within the meaning of the Individuals with Disabilities Education Act, the defendant is responsible, in providing for the education of children with disabilities within its jurisdiction, to have in effect policies, procedures, and programs that are consistent with the state policies and procedures established under the Act, 20 U.S.C. § 1412. See 20 U.S.C. § 1413(a)(1). This must include policies and procedures to assure that students with disabilities are educated with students who do not have disabilities to the maximum extent appropriate, and to assure that students with disabilities are removed from regular classes and schools only when they cannot satisfactorily be educated with supplementary aids and services. 20 U.S.C. § 1412(a)(5).

18.     The defendant is responsible for ensuring that all personnel necessary to carry out the requirements of the IDEA are appropriately and adequately prepared, consistent with the requirements of 20 U.S.C. § 1453(c)(3)(D). See 20 U.S.C. § 1413(a)(3).

19.     Defendant Thomas D. Seddon is the Superintendent of Schools of the Gloucester Township School District, with an office at 17 Erial Road, Blackwood, New Jersey 08012.  He is responsible for the administration of all educational programs provided by the district, including the programs for all special education students residing in the district.

20.     Defendant John Tighe is the Director of Special Services of the Gloucester Township School District, with an office at 17 Erial Road, Blackwood, New Jersey 08012.  He is responsible for overall management and implementation of special education services for H.B.

## FACTS

### Procedural History

21.     H.B. is eight years old and has many of the interests of a typical child of her age. She is very sociable and benefits greatly from being with typical peers of her own age. Regular education students are drawn to her amiable personality and treat her with affection and courtesy. She enjoys attending church activities and social events.

22.     As a young child, H.B. was educated in the Country Acres preschool program.

23.     In 2005-2006, H.B. was educated in the district's Blackwood School, for a one-half day regular education kindergarten and one-half day at Country Acres.  Ultimately, the Country Acres program was discontinued and H.B. attended kindergarten twice a day.

24.     From September 2006 through February 2007, H.B. was again educated in the district's Blackwood School.  Until February of that school year, H.B. was in regular education kindergarten for a full day.

25.     In February 2007, H.B. was transitioned to the district's Union Valley school (which is not her home school) to participate in the district's integrated preschool autism program.  That program had approximately nine typically developing students and three students with disabilities.

26.     During that program, H.B. was pulled out for one hour of academics and forty-five minutes of special area classes daily.  During those pull outs, H.B. participated in the subjects with typically developing kindergarten students.

27.     On June 1, 2007, an IEP meeting was conducted to discuss H.B.'s placement for first grade which would begin in September 2007.

28.     At that meeting, defendants predetermined that the appropriate placement for H.B. was in the district's autism program at the Union Valley school, which did not contain the same opportunities for education with typically developing peers as did the previous program.

29.     Plaintiffs disagreed with the proposed placement and filed a request for due process.

30.     On August 2, 2007, a mediation took place with respect to the IEP.  No resolution was reached and the request for due process went forward.

31.     When the 2007 school year commenced, however, defendants placed H.B. entirely within the self contained autism class.  Only after invoking the "stay-put" provision of the IDEA was H.B. moved to one hour per day of language arts with typically developing peers, which replicated her general education exposure in the Union Valley program (and was less than her exposure in the Blackwood program).

32.     The matter was listed for a due process hearing in October 2007, but was dismissed without prejudice in order to allow plaintiffs time to have an expert evaluation conducted.  A second petition was dismissed without prejudice when the Office of Administrative Law could not accommodate a scheduling conflict.

33.     On December 18, 2007, the dispositive due process petition was filed and assigned to the Office of Administrative Law.

34.     The Administrative Law Judge initially assigned to the matter conducted numerous scheduling and settlement conferences in an effort to attain a resolution of this matter. The parties conducted several independent meetings as well.  Ultimately, none of these efforts was successful and the matter was listed for a plenary hearing.

35.     The hearing was due to commence on May 19, 2008.  A new Administrative Law Judge was assigned to the matter due to the illness of the previously assigned judge.  After hearing the parties' opening statements, the Administrative Law Judge directed the parties to conduct another IEP meeting to set the IEP for the 2008-2009 school year.

36.     That IEP provided only twenty minutes of mathematics and twenty minutes of spelling with typically developing peers.

37.     The plaintiffs did not agree to the IEP, and pursuant to the instructions of the Administrative Law Judge, amended their due process request to include a challenge to the 2008-2009 IEP.

38.     The administrative hearing proceeded for six additional days of testimony, and the parties submitted post-hearing briefs on September 2, 2008.

39.     On September 12, 2008, the Administrative Law Judge issued a written decision denying the plaintiffs' petition.  A copy of that decision is attached hereto as Exhibit A.

40.     On June 8, 2009, the defendants conducted an IEP meeting to determine H.B.'s placement for the 2009-2010 school year.

41.     As drafted, the 2009-2010 IEP again calls for placement entirely in the district's segregated "Autism Program," with no academic instruction to take place in a general education classroom.  Even the limited twenty minutes of mathematics and twenty minutes of spelling with typically developing peers was removed by the district.

42.     The district also changed H.B.'s extended school year (summer) placement from a camp (where she interacts with typically developing peers) to an in-district autism class (without typically developing peers).

## <u>The Deficiencies in the 2007-2008 IEP</u>

43.     As drafted, the 2007-2008 IEP called for placement entirely in the district's segregated "Autism Program."

44.     There was no explicit provision in that program for any academic education with typically devloping peers.

45.     The defendants' decision was justified by the circular reasoning that stated that H.B. was appropriately placed in the "Autism Program" because she had autism.

46.     However, before removing H.B. from the general education environment, the defendants were obligated to follow the procedures of the IDEA and its implementing regulations.  The defendants were not permitted to predetermine H.B.'s placement.

47.     The defendants were first required to consider placement in the general education environment with the use of appropriate supplemental aids and services.

48.     Defendant Tighe admitted that the defendants predetermined H.B.'s placement, and did not even consider a general education placement for the 2007-2008 school year.

49.     The defendants did not consider modification of the general education curriculum. A public agency must ensure that "a child with a disability is not removed from education in age-appropriate regular classrooms solely because of needed modifications in the general curriculum."  34 C.F.R. § 300.552(e).

50.     The defendants did not consider additional teacher training to meaningfully educate H.B.

51.     The defendants did not consider the use of an inclusion facilitator, modification of the instructional approach, an augmentative communication devices, additional visual supports or aids, or any other necessary supports and services.

52.     Not only did the defendants fail to consider these supplemental aids and services, they failed to document, as required by regulations and their own IEP form, what aids and services were considered.  From the blank documentation, it can be inferred that no such aids and services were considered.

53.     The defendants made the decision, before the IEP meeting even took place, that H.B.'s placement would be in the autism room.

54.     The plaintiffs' requests for a discussion of the necessary IEP factors and considerations were dismissed out of hand and rebuffed at the IEP meeting.

55.     The IEP also provided that H.B. would receive specials with some typically developing peers, but not with a consistent group.

56.     The IEP did not provide that H.B. could enjoy lunch or recess with her typically developing peers.

57.     The IEP did not provide that H.B. could access necessary supplemental aids and services, other than her one-on-one aide, in the general education classroom.

### The Denial of FAPE in the 2007-2008 School Year

58.     The 2007-2008 school year commenced in September, 2007.

59.     Upon invocation of the "stay-put" provision of the IDEA, the defendants were obligated to educate H.B. for one hour per day in regular education.

60.     Notwithstanding the "stay-put" order, the defendants were, at all times during the 2007-2008 school year, obligated to provide H.B. with a free, appropriate public education in the least restrictive environment.

61.     The defendants chose to educate H.B. in Karen Young's first grade regular education classroom for language arts.

62.    H.B. attended Mrs. Young's class for one hour per day.

63.    Although H.B. had access to an array of supplemental aids and services in the "autism room," none of these aids and services – with the exception of a one-to-one aide – was provided in the regular education classroom.

64.    H.B.'s parents specifically requested that certain simple supplemental aids and services, such as the use of a highlighter, white board, or post-it notes be used, given that H.B. has had great success in other academic environments with these aids and services.

65.    Defendants refused.

66.    H.B's parents, and an expert retained by H.B.'s parents, suggested to the defendants that H.B. would benefit from some modifications to the curriculum while in regular education.

67.    Defendants refused.

68.    Defendants prohibited H.B. from eating lunch at the same cafeteria table with her typically developing peers.

69.    Defendants provided H.B. with recreation on the recreation yard during recess in a fenced in area with preschoolers for at least part of the school year rather than with first graders.

70.    H.B. had her special area subjects with a different peer group each day – thus placing the burden on a child who has socialization difficulties of having five different peer groups to learn to socialize with.

71.    Defendants trumpeted H.B.'s diagnosis to the entire school community by publishing a yearbook that portrayed H.B. not with typical first grade peers, but on a separate page marked "AUTISM AND MIXED AUTISM CLASSES."

72.     That same page contains an "Autism Awareness" ribbon and contains statements about children with autism.

73.     Defendants improperly viewed the "stay-put" provision as a ceiling rather than as a floor, and accordingly denied H.B. a free, appropriate public education.

<u>**The Deficiencies in the 2008-2009 IEP**</u>

74.     At the direction of the Administrative Law Judge, in May 2008, an IEP meeting was conducted for the 2008-2009 school year.

75.     That IEP provided H.B. with twenty minutes of mathematics and twenty minutes of spelling, with the remainder of her academic education to be administered in the "autism room."

76.     The decision regarding H.B.'s placement was made prior to the IEP meeting and was presented to H.B.'s parents as a "done deal."

77.     Defendants refused to discuss any alternative placements.

78.     Defendants merely photocopied pages from the prior IEP and incorporated them into the new IEP.

79.     Defendants disregarded whether any of the facts or circumstances from the previous IEP had changed.

80.     The defendants continued to refuse to permit H.B. to sit at the lunch table with her typically developing peers, instead ordering one or two typically developing students to sit at the "autism room" lunch table.

81.     The defendants claim they are providing "mainstream" opportunities, but those opportunities consist of "reverse mainstreaming," which is a contrived setting in which a few typically developing peers spend some time in the "autism room."

82.     The socialization benefits provided by this "reverse mainstreaming" are *de minimis* at best.

83.     In failing to develop an IEP that educated H.B. in the least restrictive environment for the 2008-2009 school year, the defendants denied H.B. a free, appropriate public education.

## The Deficiencies in the 2009-2010 IEP

84.     On June 8, 2009, the defendants conducted an IEP meeting to determine H.B.'s placement for the 2009-2010 school year.

85.     At that meeting, the defendants presented an IEP that called for the entirety of H.B.'s academic instruction to be delivered in the segregated "Autism Program."

86.     The defendants failed to provide an IEP that provides for H.B.'s education in the least restrictive environment by adopting an "all-or-nothing" IEP that provided for no delivery of educational services for academic subjects in an environment less restrictive than the self-contained "Autism Program."

87.     In addition to a flawed placement decision, the IEP team failed to engage meaningfully in a discussion about H.B.'s placement.

88.     Neither H.B.'s case manager nor her IEP team discussed or considered the Parents' request for a lesser restrictive placement known as "co-teaching."  The Parents' suggestion of this placement was met with silence by the IEP team.

89.     Notwithstanding H.B.'s teachers and related professionals' statements that H.B. performs well in spelling, the Parents' suggestion that delivery of educational services to H.B. take place in an environment less restrictive than the "Autism Program" was also met with silence by the IEP team.

90.     The IEP team failed to consider the full range of supplementary aids and services to maximize H.B.'s potential in a less restrictive environment; failed to consider a modified curriculum; failed to consider additional teacher training; and failed to consider other useful supports to enable H.B. to be educated in the least restrictive environment.

## FIRST CLAIM FOR RELIEF
(Violation of the Individuals with Disabilities Education Act)

91.     The allegations set forth in paragraphs 1-89 above are incorporated by reference as if set forth at length.

92.     Defendants have violated H.B's rights as secured by the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. and 34 C.F.R. § 300 et seq., by:

(a)     Denying H.B. a free, appropriate public education and an opportunity to receive a meaningful benefit from education, as defined by 20 U.S.C. § 1402(9), in violation of 20 U.S.C. § 1412(a)(1)(A), 1413(a)(1) and 34 C.F.R. §§ 300.101 and 300.320.

(b)     Failing to consider and provide the full range of supplementary aids and services, including modification of curriculum and instruction, that could enable H.B. to be educated in regular classes, in violation of 20 U.S.C. § 1412(a)(5)(A) and 34 C.F.R. § 300.114, 300.115(b)(2) and 300.116(e).

(c)     Failing to educate H.B. with children who are nondisabled to the maximum extent appropriate, in violation of 20 U.S.C. § 1412(a)(5) and 34 C.F.R. §§ 300.114(a).

(d)     Removing H.B. from the regular educational environment, when her education in regular classes could have been achieved satisfactorily with the use of supplementary aids and services, in violation of 20 U.S.C. § 1412(a)(5) and 34 C.F.R. §§ 300.114(a).

(e)     Failing to ensure H.B.'s participation with nondisabled children in nonacademic and extracurricular services and activities to the maximum extent appropriate, in violation of 20 U.S.C. § 1412(a)(5), 34 C.F.R. § § 300.107 and 300.117.

(f)     Failing to ensure that H.B. has the appropriate and necessary supplementary aids and services to participate in nonacademic and extracurricular services and activities, in violation of 20 U.S.C. § 1412(a)(5) and 34 C.F.R. § 300.117 and § 300.324(a)(3).

(g)     Making the placement decision for H.B. by a group of which her parents were not members, in violation of 20 U.S.C. § 1414(e) and 34 C.F.R. § 300.327.

(h)      Failing to provide the special education and related services necessary for H.B. to be involved in and make reasonable progress in the general curriculum, as required by 20 U.S.C. § 1412(a)(1), 1414(d)(3), 1414(d)(4), 34 C.F.R. § 300.101, 300.320 and 300.324(a) and (b).

(i)     Failing to provide the special education and related services necessary for H.B. to make reasonable progress in communication skills, in violation of 20 U.S.C. § 1414(d)(3)(B)(iv) and  34 C.F.R.§ 300.324(a)(2)(v).

(j)     Failing to provide appropriate assistive technology services, in violation of 20 U.S.C. § 1414(d)(3)(B)(v), 34 C.F.R.§§  300.324(a)(2)(v) and 300.324(b)(2).

(k)     Failing appropriately to evaluate H.B. by trained and knowledgeable personnel, in violation of 20 U.S.C. § 1414(b)(2)-(3) and 34 C.F.R § 300.304.

(l)     Failing to select and administer tests that accurately reflect H.B.'s aptitude or achievement, rather than her impaired. sensory, manual, or speaking skills, in violation of 34 C.F.R. § 300.304(c)(3).

(m)     Failing to ensure that all personnel necessary to carry out this part are appropriately and adequately trained and prepared, in violation of 20 U.S.C. § 1413(a)(3).

**SECOND CLAIM FOR RELIEF**
(Violation of the Americans with Disabilities Act)

93.     The allegations set forth in paragraphs 1-92 above are incorporated by reference as if set forth at length.

94.     Defendants have violated the rights of H.B. secured by the Americans With Disabilities Act of 1990, 42 U.S.C. § 12131 et seq. and 28 C.F.R.§ 35.130, by:

(a)     Denying H.B., on the basis of her disabilities, the opportunity to participate in and benefit from regular education services, programs, and activities, including academic and nonacademic services and school activities, in violation of 42 U.S.C. § 12132(a) and 28 C.F.R. § 30.130(a), (b)(1)(i).

(b)     Subjecting H.B. to discrimination on the basis of her disability, in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(a).

(c)     Failing to provide H.B. an opportunity to participate in and benefit from regular education and other  services that is equal to the opportunity afforded students without disabilities, in violation of 28 C.F.R. § 35.130(b)(ii).

(d)     Failing to provide H.B. with educational and other services that are as effective in affording equal opportunity as the services provided to students without disabilities, in violation of 28 C.F.R. § 35.130(b)(iii).

(e)     Providing different and separate services to H.B. from those provided to others, which is not necessary to provide H.B. with services that are as effective as those provided others, in violation of 28 C.F.R. § 35.130(b)(iv).

(f)      Limiting H.B.'s enjoyment of the right and opportunity to receive a public education in the least restrictive environment, in violation of 28 C.F.R. § 35.130(b)(1)(vii).

(g)      Denying H.B. the opportunity to participate in educational and non-educational services that are not separate or different by segregating H.B. on the basis of her disability, in violation of 28 C.F.R. § 35.130(b)(2).

(h)      Failing to provide H.B. specialized instruction, adaptations and accommodations in the regular classroom, in violation of 28 C.F.R. § 35.130(b)(7).

(i)      Imposing eligibility criteria that screens out H.B. from fully and equally enjoying regular education services, which is not necessary for the provision of education to H.B., in violation of 28 C.F.R. § 35.130(b)(8).

(j)      Failing to educate H.B. in the most integrated setting appropriate to her needs, a regular educational program with supplementary aids and services, in violation of 28 C.F.R. § 35.130(d).

### THIRD CLAIM FOR RELIEF
(Rehabilitation Act)

95.      The allegations set forth in paragraphs 1-94 above are incorporated by reference as if set forth at length.

96.      Defendants have intentionally, purposefully and in bad faith, violated the rights of H.B. secured by Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 and 34 C.F.R. § 104.4.

(a)      Denying H.B., on the basis of her disabilities, the opportunity to participate in and benefit from federally-assisted regular education services, programs, and activities, including academic and nonacademic services and school activities, in violation of 29 U.S.C. § 794(a) and 34 C.F.R. § 104.4(a), (b)(I).

(b)     Subjecting H.B. to discrimination on the basis of her disability, in violation of 29 U.S.C. § 794(a) and 34 C.F.R. § 104.4(a).

(c)     Failing to provide H.B. an opportunity to participate in and benefit from regular education and other  services that is equal to the opportunity afforded students without disabilities, in violation of 34 C.F.R. § 104.4(b)(ii).

(d)     Failing to provide H.B. with educational and other services that are as effective in providing equal opportunity as the services provided to students without disabilities, in the most integrated setting, in violation of 34 C.F.R. § 104.4(b)(1)(iii), (2).

(e)     Providing different and separate services to H.B. from those provided to others, which separation is not necessary to provide H.B. with services that are as effective as those provided others, in violation of 34 C.F.R. § 104.4(b)(v).

(f)     Limiting H.B.'s enjoyment of the right and opportunity to receive a public education in the least restrictive environment, in violation of 34 C.F.R. § 104.4(b)(1)(vii).

(g)     Denying H.B. the opportunity to participate in educational and non-educational services that are not separate or different by segregating H.B. on the basis of her disability, in violation of 34 C.F.R. § 104.4(b)(3).

(h)     Failing to educate H.B. in the most integrated setting appropriate to her needs -- a regular educational program with supplementary aids and services -- in violation of 34 C.F.R. § 104.4(b)(2).

### FOURTH CLAIM FOR RELIEF
(Violation of 42 U.S.C. § 1983)

97.     The allegations set forth in paragraphs 1-96 above are incorporated by reference as if set forth at length.

98.     Defendants have violated the rights of H.B. secured by 42 U.S.C. Section 1983 by acting under color of law, intentionally, willfully and with deliberate indifference, to deprive her of rights and privileges secured and protected by the Constitution and laws of the United States.

### FIFTH CLAIM FOR RELIEF
(Violation of the New Jersey Law Against Discrimiation)

99.     The allegations set forth in paragraphs 1-98 above are incorporated by reference as if set forth at length.

100.    Defendants have violated the rights of H.B. secured by the New Jersey Law Against Discrimination by discriminating against H.B., under color of law, willfully and with deliberate indifference, on account of her disability.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests the Court to do the following:

1.     Receive the records of the administrative proceedings;

2.     Hear additional evidence at the request of a party;

3.     Base its decision on the preponderance of the evidence;

4.     Grant such relief as the Court determines appropriate, including:

(a)     Preliminarily and permanently enjoin the defendants to include H.B. in regular classes and other classes in the district for all academic and non-academic classes and to provide her with appropriate supplementary aids and services in the schools of the District;

(b)     Preliminarily and permanently enjoin the defendants to develop an Individualized Education Program (IEP) for H.B. that affords her a meaningful benefit from education, that enables her to participate and progress in the general education curriculum, that enables her to learn meaningful academic and functional skills, and that includes the goals and objectives, specially designed instruction, related services and support for school personnel that are necessary for H.B. to benefit from education.

(c)     Preliminarily and permanently enjoin the defendants to fully include H.B. in all regular school activities and extracurricular activities as well as lunch and recess.

(d)     Preliminary and permanently enjoin the defendants to ensure that delivery of academic services to H.B. takes place in the least restrictive environment.

(e)     Preliminarily and permanently enjoin the defendants to conduct or sponsor appropriate evaluations of H.B.'s intellectual ability and communication skills and incorporate the results of those evaluations into H.B.'s IEP.

(f)     Preliminarily and permanently enjoin the defendants to include appropriate communication instruction and intervention into H.B.'s IEP.

(g)     Preliminarily and permanently enjoin the District to require all instructional staff to be trained in the delivery of appropriate communication instruction and support to H.B.

(h)     Preliminarily and permanently enjoin the District to develop its IEPs for H.B. in compliance with the procedural requirements of the IDEA and applicable regulations.

(i)     Award compensatory education for the entire period that H.B. has been deprived of the opportunity to be educated with children who do not have disabilities to the maximum extent appropriate, to receive appropriate supplementary aids and services in regular class and to participate in nonacademic and extracurricular activities.

(j)     Assure that District personnel are adequately trained to instruct H.B. within the matrix of the regular class;

(k)     Award Plaintiff her damages, reasonable attorney fees and costs; and

(l)     Award such other relief as the Court deems appropriate.

Respectfully submitted,

**DUANE MORRIS LLP**
A Delaware Limited Liability
    Partnership

/s/Christopher L. Soriano
Christopher L. Soriano
1940 Route 70 East, Suite 200
Cherry Hill, NJ 08003

**PUBLIC INTEREST LAW
CENTER OF PHILADELPHIA**

/s/Judith A. Gran
Judith A. Gran (admitted *pro hac
vice*)
125 S. Ninth Street, Suite 700
Philadelphia, PA 19107

Dated:  September _____, 2009

## CERTIFICATION PURSUANT TO L. Civ. R. 11.2

Pursuant to Local Rule of Civil Procedure 11.2, I certify that the within matter in controversy is not, to the best of my knowledge, information, and belief, the subject of any other action pending in any court, arbitration, or administrative proceeding.

/s/Christopher L. Soriano
Christopher L. Soriano