**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| D.B. and L.B., on behalf of H.B., <br><br>      Plaintiffs, <br><br>   v. <br><br> GLOUCESTER TOWNSHIP SCHOOL DISTRICT, THOMAS D. SEDDON and JOHN TIGHE, <br><br>      Defendants. | HONORABLE JOSEPH E. IRENAS <br><br> CIVIL ACTION NO. 08-5667 (JEI) <br><br>       **OPINION** |

**APPEARANCES:**

DUANE MORRIS LLP
By: Christopher Leo Soriano
1940 Route 70 East
Suite 200
Cherry Hill, New Jersey 08003
        Counsel for Plaintiffs

CONNOR WEBER & OBERLIES, P.C.
By: Michael S. Mikulski, II
Ten Melrose Avenue
Suite 450
Cherry Hill, New Jersey 08003
        Counsel for Defendants

**IRENAS**, Senior District Judge:

Plaintiffs, D.B. and L.B., on behalf of their minor daughter, H.B., bring this suit against Defendant Gloucester Township School District (the "School District"), Defendant Thomas D. Seddon, Superintendent of Schools of the School District, and Defendant John Tighe, Director of Special Services

of the School District.[1]  Plaintiffs First Claim for Relief, brought under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. §§ 1400-1491, asserts that Defendants failed to provide H.B. with a free appropriate public education ("FAPE").  Plaintiffs also bring claims under the Americans With Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12101-12213 (Second Claim for Relief), the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. §§ 701-796 (Third Claim for Relief), as well as civil rights violations under 42 U.S.C. § 1983 (Fourth Claim for Relief) and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5 (Fifth Claim for Relief).[2]

Plaintiffs seek injunctive relief that would require the School District to, amongst other things, create a new Individualized Education Program ("IEP") for H.B., include H.B. in regular classes and provide H.B. with appropriate supplementary aids and services.[3]

---

[1] Although Plaintiffs bring their claims against Defendant Tighe "individually and in his official capacity," there are no allegations in the Amended Complaint that Defendant Tighe acted outside his official capacity as Director of Special Services of the School District.

[2] The Court has subject matter jurisdiction pursuant to 20 U.S.C. § 1415(i) and 28 U.S.C. § 1367.

[3] Plaintiffs also seek "damages, reasonable attorneys fees and costs...." (Amended Complaint p. 20) Plaintiffs assert that they are seeking "a remedy for the time where H.B. has been denied a free, appropriate public education in the past."

Defendants move for summary judgment on all of Plaintiffs' claims.  Plaintiffs move for summary judgment on Plaintiffs' First Claim for Relief under the IDEA or, in the alternative, judgment on the administrative record as supplemented by Plaintiffs.

For the reasons stated herein, to the extent Plaintiffs seek equitable relief, Plaintiffs' Motion will be granted as to Plaintiffs' First Claim for Relief under the IDEA, the decision and order of the Administrative Law Judge ("ALJ") dated September 12, 2008 will be vacated, and Defendants will be ordered to draft an IEP for H.B. in accordance with the procedural requirements of the IDEA.  To the extent Plaintiffs seek money damages, Defendants' Motion will be granted as to Plaintiffs' First Claim for Relief under the IDEA.  Defendants' Motion will also be granted as to Plaintiffs' Fourth Claim for Relief under § 1983.  Plaintiffs' Second Claim for Relief Under the ADA, Third Claim for Relief under the Rehabilitation Act, and Fifth Claim for Relief under the NJLAD will be dismissed as moot as the relief sought under those claims has either been otherwise granted or is unavailable to Plaintiffs.

---

(Amended Complaint ¶ 1)  It should be noted, though, that "compensatory and punitive damages are not an available remedy under the IDEA." *Chambers v. Sch. Dist. Of Phila. Bd. of Educ.*, 587 F.3d 176, 185-86 (3d Cir. 2009).  Plaintiffs include a litany of forms of relief to which they assert they are entitled, but do not specify on which cause of action each such form of relief is based.

**I.**

H.B., who has been diagnosed with autism, is a student in the School District.  (Amended Complaint ¶ 1, 14) For the 2005-2006 school year, H.B. attended the School District's Blackwood School for a half-day regular education kindergarten program and attended Country Acres for a half-day special education program. (*Id.* at 23) When the special education program at Country Acres was terminated in the middle of the 2005-2006 school year, H.B. attended Blackwood School for the entire day.  (*Id.*)

For the 2006-2007 school year, H.B. was initially placed in a regular education class at the Blackwood School for the entire day.  (*Id.* at 24)  In February 2007, H.B. transitioned to the School District's Union Valley School to participate in the integrated preschool autism program.  (*Id.* at 25) For approximately 1 hour and 45 minutes per day, she participated in classes with typically developing kindergarten students.  (*Id.* at 26)

At the end of the 2006-2007 school year, a meeting was conducted to draft H.B.'s IEP for the 2007-2008 school year.[4]

_____

[4] An IEP is a written statement for each child with a disability that is developed, reviewed and revised by the IEP team, and which must include, amongst other things, a statement of the child's present level of performance, measurable academic and functional goals, a description of how to measure achievement of those goals, a statement of the special education and related services and supplemental aids and services to be provided to the child, and an explanation of the extent to which the child will not participate with nondisabled children in the regular class.

(*Id.* at 27) The School District concluded that the appropriate placement for H.B. was in the School District's full-time autism program.  (*Id.* at 28) D.B. and L.B. disagreed with the School District's proposal, refused to sign the IEP and filed a request for due process.[5]  (*Id.* at 29)

Although mediation took place with regard to the IEP prior to the 2007-2008 school year, no resolution was reached between the parties.  (*Id.* at 30) When the school year commenced, Plaintiffs invoked the "stay-put" provision of the IDEA,[6] and H.B. was placed in the autism program, except for one hour per day of language arts with typically developing peers.  (*Id.*)

---

20 U.S.C. § 1414(d)(1)(A)(i).  The IEP team is composed of the parents of the child, at least one regular education teacher of the child (if the child is participating in regular education), at least one special education teacher of the child, a representative of the local educational agency and an individual that can interpret the instructional implications of evaluation results.  20 U.S.C. § 1414(d)(1)(B).

[5] When a dispute arises between the parents of a disabled child and the school over the adequacy of the IEP proposed for the child, either party has a right to resolve the matter through a state administrative proceeding known as an "impartial due process hearing." 20 U.S.C. § 1415(b)(2). Under New Jersey regulations, due process hearings are held before an administrative law judge of the New Jersey Office of Administrative Law. See N.J.A.C. 6A:14-2.7(a).

[6] The stay-put provision requires that "during the pendency of any  proceedings conducted pursuant to this section, unless the State or  local educational agency and the parents otherwise agree, the child  shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all  such proceedings have been completed." 20 U.S.C. § 1415(j).

On December 18, 2007, the instant due process petition was filed by Plaintiffs.  (*Id.* at 33) After a number of settlement conferences, the ALJ directed the parties to conduct a meeting to set the 2008-2009 IEP.  (*Id.* at 34-35) The School District concluded that the appropriate placement for H.B. was in the autism program, with 20 minutes of mathematics and 20 minutes of spelling with typically developing peers.  (*Id.* at 36) Again, D.B. and L.B. disagreed.  (*Id.* at 37) Plaintiffs were granted leave to amend their due process request to include a challenge to the 2008-2009 IEP. (*Id.*)

An administrative hearing commenced before the ALJ.  (*Id.* at 38).  The ALJ issued his written decision on September 12, 2008, denying the Plaintiffs' due process petition.  (*Id.* at 38-39) The ALJ found that D.B. and L.B. "failed to meet their burden of proof that the [School District] failed to provide H.B. with a free and appropriate public education."  (ALJ Dec. p. 29)

Plaintiffs filed their original Complaint on November 18, 2009, appealing the ALJ's decision and alleging that the 2007-2008 IEP and the 2008-2009 IEP violated the IDEA, the ADA and the Rehabilitation Act, and violated H.B.'s civil rights.

In June 2009, a meeting was held to set the 2009-2010 IEP. (*Id.* at 40) The School District concluded that the appropriate placement for H.B. was in the School District's autism program, with no instruction taking part with typically developing peers.

(*Id.* at 41)  The School District's proposed 2009-2010 IEP also called for H.B.'s summer placement to be in an autism class, rather than a summer camp with typically developing peers.  (*Id.* at 42) Again, D.B. and L.B. disagreed with this placement.  (*Id.* at 84-90)

Plaintiffs were granted leave by the Court to amend their Complaint to include challenges to the 2009-2010 IEP.  Plaintiffs filed their Amended Complaint on October 23, 2009.

On May 14, 2010, Defendants moved for summary judgment on all claims and Plaintiffs moved for summary judgment on their IDEA claim.

## II.

"When deciding an IDEA case, the district court applies a modified *de novo* review and is required to give due weight to the factual findings of the ALJ." *M.S. v. Ramsey Bd. of Ed.*, 435 F.3d 384, 389 (3d Cir. 2006).  The Court must "defer to the ALJ's factual findings unless it can point to contrary non-testimonial extrinsic evidence on the record." *S.H. v. State-Operated Sch. Dist.*, 336 F.3d 260, 270 (3d Cir. 2003).  The Court's decision is based on the preponderance of the evidence.  20 U.S.C. § 1415(i)(2)(B)(iii).

"Because the IDEA requires a district court to grant a judgment on the record based on its own ascertainment of the preponderance of the evidence, many IDEA claims do not fit into

7

the typical summary judgment standard of 'no genuine issues of
material fact.'" *L.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 974
(10th Cir. 2004).  The parties in this case are effectively
seeking "a judgment on the administrative agency's record." *Id.*
Although seeking judicial review of an administrative agency's
decision by way of a summary judgment motion "is permissible
under the IDEA, it is not a true summary judgment procedure.
Instead, the district court essentially conduct[s] a bench trial
based on a stipulated record." *Ojai Unified Sch. Dist. v.
Jackson*, 4 F.3d 1467, 1472 (9th Cir. 1993).

As to Defendants' Motion for Summary Judgment on the non-
IDEA claims, the standard summary judgment review will be
performed.  "[S]ummary judgment is proper 'if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law.'" *Celotex Corp. v.
Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P.
56(c)).  In deciding a motion for summary judgment, the Court
must construe the facts and inferences in a light most favorable
to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*,
794 F.2d 860, 864 (3d Cir. 1986).  "'With respect to an issue on
which the non-moving party bears the burden of proof, the burden
on the moving party may be discharged by 'showing'– that is,

pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III.

### A.

H.B., through her parents, seeks relief for Defendants' alleged violations of the IDEA. The IDEA provides federal funds to participating states for the education of children with disabilities. As a condition of receiving these funds, states must have "in effect a policy that assures all children with disabilities the right to a free appropriate public education." 20 U.S.C. § 1412(1).

In *Board of Educ. v. Rowley*, 458 U.S. 176, 188-89, 102 S. Ct. 3034, 3042, 73 L. Ed. 2d 690 (1982), the Supreme Court held that a free appropriate public education under the IDEA "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." The Third Circuit interpreted *Rowley* to require the state to offer children with disabilities individualized education

programs that provide more than a trivial or de minimis educational benefit. *Polk v. Central Susquehanna Intermediate Unit 16*, 853 F.2d 171, 180-85 (3d Cir. 1988).

In determining the scope of a district court's review under the IDEA, the Supreme Court held that the court must make a two-part inquiry: first, whether the state has complied with the procedural requirements of the IDEA, and second, whether the IEP developed pursuant to these procedures is "reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 206-07.

The procedural requirements of the IDEA are essential to the fulfillment of its purposes. The Supreme Court has noted that it is "no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process... as it did upon the measurement of the resulting IEP against a substantive standard." *Rowley*, 458 U.S. at 205-206.

The IDEA itself sets forth procedural requirements, 20 U.S.C. § 1415, which have been further delineated in federal and state regulations promulgated thereunder, 34 C.F.R. § 300.500, N.J.A.C. § 6A:14-2.

Under New Jersey state regulations implementing the IDEA, procedural violations may lead to a finding that a student did

not receive a FAPE if the violations "(1) impeded the child's right to a FAPE; (2) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of FAPE to the child; or (3) caused a deprivation of educational benefits." N.J.A.C. § 6A:14-2.7. *See also G. N. ex rel. J.N. v. Bd. of Educ.*, 309 Fed. Appx. 542, 545-546 (3d Cir. 2009).[7]

Procedures used to develop an IEP must be strictly reviewed, although "technical deviations do not render an IEP invalid.*" Dong ex rel. Dong v. Board of Educ.*, 197 F.3d 793, 800 (6th Cir. 1999).

Plaintiffs contend that the School District "predetermined [H.B.]'s placement and, as a result, committed a procedural violation because it failed to allow the parents to participate meaningfully in the decision making process...." (Pls.' Brief, p. 13)

Predetermination of an IEP can be grounds for finding a

_____

[7] In this case, the ALJ made no factual findings concerning the appropriateness of the procedures used in drafting the IEP. Defendants have argued that "the ALJ's silence on the issue was tacit approval of the method in which the [School District]'s IEP team designed the IEP and the way the [School District] implemented the IEP." (Defendants' Opposition p. 8)  The Court disagrees.  The Court must defer to the ALJ's factual findings. In this instance, since there are no factual findings related to the procedures the School District used in drafting the IEPs, there is nothing to which the Court may defer.  Silence on the part of the ALJ cannot be interpreted as tacit approval of the procedures of the IEP team.

violation of the IDEA, in particular because predetermination can serve to exclude parents from meaningfully participating in the decision making process.  *See Spielberg v. Henrico County Public Schools*, 853 F.2d 256, 259 (4th Cir. 1988)*; Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 857-58 (6th Cir. 2004).  *Cf. Fuhrmann v. East Hanover Bd. of Educ.*, 993 F.2d 1031, 1036-1037 (3d Cir. 1993)(finding no predetermination when parents were involved in the development of an IEP in a meaningful way).  Further, a student's placement must be based on the IEP, and not the other way around. 34 C.F.R. § 300.442; 34 C.F.R. Part 300, App. C.  Therefore it is essential that the IEP is created prior to any final placement decisions.

**2007-2008 IEP**

The 2007-2008 IEP is the first IEP before the Court.  There were no discussions of this IEP with H.B.'s parents prior to the IEP meeting. (Tr. L.B. p. 59-60)  Nonetheless, at the IEP meeting, the only proposal entertained by the School District was full-time placement in the autism program.  (*Id.*)  H.B.'s parents protested and tried to discuss alternative placements, both at the meeting and afterwards.  (*Id.* at 60-61)  These efforts were rebuffed, and no other placements were discussed besides the placement advanced by the School District.  (*Id.*)

This account of the design of the IEP is supported by the testimony of Defendant Tighe.  Defendant Tighe testified that

placement with typically developing peers was "removed as a consideration" for the 2007-2008 IEP meeting because it had already been determined not to be an "appropriate program."  (Tr. Tighe p. 53)

The testimony of Lydia Gladding, one of H.B.'s case managers, further supports Plaintiffs' position.  Mrs. Gladding recognized that the parents wanted to discuss alternative placements at the IEP meeting, and confirmed that the representatives of the School District refused to discuss any alternative placements.  (Tr. Gladding. p. 71)  She could not explain this refusal, except to admit that the parties were at "opposing poles" and therefore discussion was unnecessary.  (*Id.*)  Mrs. Gladding also testified that she had determined, prior to the IEP meeting, that other alternatives for H.B. were not appropriate.  (*Id.*)  This determination was based on her previous experiences with H.B., and did not involve input from or discussions with the parents.  (*Id.*)

**2008-2009 IEP**

Plaintiffs assert that the 2008-2009 IEP was also predetermined, and that the parents were excluded from any meaningful participation in the decision making process.  The School District was seeking 40 minutes of placement in regular education classrooms for the 2008-2009 school year.  Defendant Tighe testified that there was no need to discuss any alternative

placements at the 2008-2009 IEP meeting because it had already been determined that any greater time in the regular classroom was not appropriate.  (Tr. Tighe. p. 53)  Again, this prior determination was made without input from or discussions with H.B.'s parents.

Patricia Marino, a learning consultant and member of H.B.'s IEP team, testified that the only placement discussed was 40 minutes in the regular classroom.  No other alternatives were allowed to be discussed, although the parents again sought discussion about alternative placements.  (Dep. Marino p. 27)[8]

## 2009-2010 IEP

The final IEP before the Court is the 2009-2010 IEP.  Once again, Plaintiffs assert that the IEP was predetermined and that H.B.'s parents were denied meaningful involvement in the creation of the IEP.

L.B. has testified that her questions at the 2009-2010 IEP meeting were systematically ignored by the other members of the IEP team.  (L.B. Dep. p. 33)[9]

---

[8] Mrs. Marino apparently believed that the proposed 2008-2009 IEP was court mandated. (Pls.' Brief, p. 16) This was not true.  Nonetheless, this further supports Plaintiffs' claims, as it indicates there was no meaningful discussion of the 2008-2009 IEP, for whatever reason.

[9] Sometimes her questions were literally met with only silence.  (L.B. Dep. p. 32-34)  In one instance, L.B. asked if the School District was using co-teaching the next school year and  she was told that it was.  (*Id.*)  But when L.B. inquired whether co-teaching would be available for H.B., she received no response.  (*Id.*)

Mrs. Marino has confirmed L.B.'s account of this IEP
meeting, testifying that she never explained to the parents why
she thought the autism program was the best option for H.B.
(Dep. Marino p. 45)  Her only justification for this lack of
discussion and explanation was that the meeting "was a couple of
hours and I was tired." (*Id.*)

Defendants argue that the parents were present at each of
the IEP meetings.  (Def.'s Opposition p. 8) This is undisputed
but is not enough to satisfy the procedural requirements of the
IDEA.  Defendants further argue that the parents "were provided
the opportunity to participate in discussions about the
educational program and they offered opinions as to the plan
being established for H.B." (*Id.*)  Even if true, this conclusory
statement, made without any citation to the record or evidentiary
support, does not establish that the parents were allowed the
opportunity to meaningfully participate in the decision-making
process as is required by the IDEA.[10]

Plaintiffs have shown that for each of the IEPs before the
Court, the School District had come to definitive conclusions on
H.B's placement without parental input, failed to incorporate any
suggestions of the parents or discuss with the parents the

---

[10] Defendants make the additional argument that because the
amount of regular education time was changed in each successive
year, the IEPs could not have been predetermined.  (Def.'s
Opposition p. 8-9) This argument is unpersuasive on the issue of
predetermination because it is not material whether the IEP
changes from year to year.

prospective placements, and in some instances even failed to listen to the concerns of the parents.  It is clear from the evidence before the Court that the IEPs were predetermined, and therefore the School District denied the parents any meaningful participation in the development of the IEPs in violation of IDEA.[11]

To the extent that Plaintiffs seek equitable relief, summary judgment will be granted in favor of the Plaintiffs on their First Claim of Relief under the IDEA, the ALJ's decision and order is vacated, and Defendants are ordered to draft an IEP for H.B. in accordance with the procedural requirements of the IDEA.[12]

---

[11]The Court does not hold that it is a violation of the IDEA for members of the IEP team to come to preliminary conclusions prior to the IEP meeting.  Members of the IEP team interact with the student over a period of time, and are expected to analyze the child based on those experiences.  This does not mean, though, that the IEP meeting should be a mere formality.  In *Furhmann*, the Third Circuit found there was no predetermination even though a draft IEP had been circulated prior to the IEP meeting. 993 F.2d at 1036.  The parents had been allowed to comment on the draft IEP, and some of their comments were incorporated into the final IEP.  *Id*.  Even though the parents did not sign the final IEP, the parents still had an opportunity to participate in the drafting of the IEP in a meaningful way.  *Id*.  That is in contrast to the case before the Court, in which there was no draft IEP distributed prior to the meeting, there was no evidence that the comments of the parents were entertained by the members of the IEP team and there was no evidence that the parents concerns were incorporated into the final version of the IEP.

[12] Because Defendants failed to develop the IEPs according to the procedures required by the IDEA, it is not necessary to address the question of whether the proposed IEPs were

**B.**

In addition to seeking equitable relief, Plaintiffs are seeking money damages. *See supra* n. 3.

The Supreme Court has held that the IDEA authorizes courts to order school authorities to reimburse parents for their expenditures on private education for a child if the court ultimately decides that such placement, rather than the proposed IEP, is proper under the IDEA. *See Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369 (U.S. 1985).  The Supreme Court noted that this reimbursement is not a form of "damages," but is reimbursement for expenses that the school "should have paid all along and would have borne in the first instance had it developed

---

substantively appropriate. *See Rowley*, 458 U.S. at 201, 204-05. It is worth noting, though, that the School District is required to create IEPs in which H.B. is placed in the "least restrictive environment."  The Third Circuit has established a test to determine if a school district has placed a student in the least restrictive environment.

> First, the court must determine "whether education in the regular classroom, with the use of supplementary aids and services, can be achieved satisfactorily."  Second, if the court finds that placement outside of a regular classroom is necessary for the child to benefit educationally, then the court must decide whether the school has mainstreamed the child to the maximum extent appropriate, i.e., whether the school has made efforts to include the child in school programs with nondisabled children whenever possible.

*Oberti v. Board of Educ.*, 995 F.2d 1204, 1215 (3d Cir. 1993) (internal citations omitted).

17

a proper IEP." *Id.* at 370.

Given the decision in *Burlington*, the Court of Appeals for the Third Circuit held that compensatory and punitive damages, as opposed to reimbursement expenses, are not available under the IDEA. *See Chambers*, 587 F.3d at 185-86. In *Chambers*, the court noted that "[t]he language and structure [of the IDEA] make plain that Congress intended to ensure that disabled children receive a FAPE under appropriate circumstances, not to create a mechanism for compensating disabled children and their families for their pain and suffering where a FAPE is not provided." *Id.* at 186.

H.B.'s parents are not seeking reimbursement of expenses that they incurred in sending H.B. to a private school during the period of time which they were litigating H.B.'s IEPs. H.B. was enrolled in the School District during this entire period, and there were no private school expenses to be reimbursed. Instead, Plaintiffs have asserted that they are seeking a remedy for the time during which H.B. has been denied a FAPE. As the Third Circuit has made clear, such damages are not available under the IDEA. Accordingly, to the extent that Plaintiffs seek money damages, summary judgment will be granted in favor of Defendants on Plaintiffs' First Claim of Relief under the IDEA.[13]

---

[13] Even if money damages were allowed, Plaintiffs have not alleged any facts which would indicate that money damages are an appropriate remedy in this case. During the entirety of the dispute, H.B. has been a recipient of free education from the School District. If it is ever determined that the education

Attorneys' fees and related costs are available to Plaintiffs to the extent they are the prevailing party and make a proper motion before this Court for such fees. *See* 20 U.S.C. § 1415(i)(3)(B).

### C.

Defendants have also moved for summary judgment on Plaintiffs' Second Claim for Relief under the ADA, Third Claim for Relief under the Rehabilitation Act, Fourth Claim for Relief under § 1983 and Fifth Claim for Relief under the NJLAD.

**Section 1983**

The Third Circuit held in *A.W. v. Jersey City Pub. Sch.* that "Congress did not intend § 1983 to be available to remedy violations of the IDEA...." 486 F.3d 791, 803 (3d Cir. 2007). The Court noted "the comprehensive nature of IDEA's remedial scheme", and held that when Congress includes a private remedial provision in a statute, "it is ordinarily an indication that Congress did not intend to leave open a more expensive remedy under § 1983." *Id.* at 801-803 (internal citations omitted).

Plaintiffs nonetheless contend that their § 1983 claim should survive summary judgment because *A.W.* does not apply to claims for injunctive relief. Plaintiffs find support for this

---

provided to H.B. during the period in dispute was not fair and adequate, the appropriate remedy would be compensatory education for the time during which her education was deficient, not money damages. *See  Lester H. v. Gilhool*, 916 F.2d 865, 873 (3d Cir. 1990).

in the opinion in *L.J. v. Audubon Bd. of Educ.*, 2009 U.S. Dist. LEXIS 31473 (D.N.J. Apr. 13, 2009).  In that case, the court found that a plaintiff could bring a § 1983 claim for injunctive relief against a school district which was not enforcing a ruling by an administrative court in favor of the plaintiff.  The court noted that it was creating a limited exception to *A.W.* for injunctions to enforce rulings of administrative courts.  This Court will not expand the limited exception of *A.W.*  Because Plaintiff is not seeking an injunction to enforce a favorable ruling by an administrative court, summary judgment will be granted in favor of Defendants on Plaintiffs' Fourth Claim for Relief under § 1983.

**ADA, the Rehabilitation Act and the NJLAD**

Plaintiffs also seek equitable relief and money damages under their Second Claim for Relief under the ADA, the Third Claim for Relief under the Rehabilitation Act and the Fifth Claim for Relief under the NJLAD.  These are the same remedies Plaintiffs seek under the IDEA.  Because Plaintiffs are entitled to equitable relief under their IDEA claim, and because money damages are not appropriate in the present case as discussed *supra*, these claims are moot and will not be reached by the Court.[14]

---

[14] While money damages may be appropriate in certain instances under these causes of action, courts have found that these statutes do not create general tort liability for

**IV.**

For the reasons set forth above, to the extent Plaintiffs
are seeking equitable relief, Plaintiffs' Motion for Summary
Judgment or, in the Alternative, Judgment on the Administrative
Record as Supplemented on their First Claim for Relief under the
IDEA will be granted, and Defendants' Motion for Summary Judgment
will be denied.  The decision and order of the ALJ dated
September 12, 2008 will be vacated, and Defendants are ordered to
draft an IEP for H.B. in accordance with the procedural
requirements of the IDEA.[15]

To the extent that Plaintiffs seek money damages under the
IDEA (excluding attorneys' fees and related costs), Plaintiffs'
Motion for Summary Judgment or, in the Alternative, Judgment on
the Administrative Record as Supplemented on their First Claim

---

educational malpractice, particularly in light of the fact that
the Supreme Court has "warned against a court's substitution of
its own judgment for educational decisions made by state
offices."  *Monahan v. Nebraska*, 687 F.2d 1164, 1171 (8th Cir.
1982).  *See also Sellers v. Sch. Bd.,* 141 F.3d 524, 527 (4th Cir.
1998)  ("The purpose of these procedural mechanisms is to
preserve the right to a free appropriate public education, not to
provide a forum for tort-like claims of educational
malpractice.").

[15]  The Court is not holding that the substantive content of
H.B.'s current IEP is in violation of the IDEA, or that the IEP
to be drafted in accordance with the terms of this Opinion and
the accompanying Order must vary in any material way from H.B.'s
current IEP.  The Court is only ordering that H.B.'s IEP be
drafted in accordance with the procedural requirements of the
IDEA - specifically, that H.B.'s parents are allowed to
meaningfully participate in the drafting process.

21

for Relief under the IDEA will be denied and Defendants' Motion for Summary Judgment will be granted.

Defendants' Motion for Summary Judgment will also be granted as to Plaintiffs' Fourth Claim for Relief under § 1983.

Plaintiffs' Second Claim for Relief Under the ADA, Third Claim for Relief under the Rehabilitation Act, and Fifth Claim for Relief under the NJLAD will be dismissed as moot as the relief sought under those claims has either been otherwise granted or is unavailable to Plaintiffs.  An appropriate Order accompanies this Opinion.


Date: November 17, 2010

                                   s/ Joseph E. Irenas
                                   JOSEPH E. IRENAS, S.U.S.D.J.

22