## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| D.B. and L.B., on behalf of H.B, | Civil No. 08-5667 (NLH/KMW) |
| Plaintiffs, | **OPINION** |
| v. | |
| GLOUCESTER TOWNSHIP SCHOOL DISTRICT, THOMAS D. SEDDON and JOHN TIGHE, Defendants. | |

**APPEARANCES:**

Christopher Leo Soriano, Esquire
Duane Morris LLP
1940 Route 70 East
Suite 200
Cherry Hill, New Jersey 08003
    *Attorney for Plaintiffs*

Michael S. Mikulski, II, Esquire
Connor, Weber & Oberlies, P.C.
Ten Melrose Avenue
Suite 450
Cherry Hill, New Jersey 08003

Angela B. Kosar, Esquire
Connor, Weber & Oberlies, P.C.
236 W. Route 38
Suite 200
Moorestown, New Jersey 08057
    *Attorneys for Defendants*

**HILLMAN, District Judge**

    This matter comes before the Court on Plaintiffs' motion

[Doc. No. 60] for attorneys' fees and costs seeking a total award in the amount of $546,355.53[1] pursuant to Section 1415(i)(3)(B) of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3)(B).  Defendant Gloucester Township School District ("the District") opposes Plaintiffs' and requests that the Court deny the motion in its entirety, or alternatively, reduce the total award of fees to $335,319.13 and not award any costs.  The Court has considered the parties' submissions, and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons expressed below, Plaintiffs' motion will be granted in part with respect to an award of attorneys' fees and denied without prejudice in part as to Plaintiffs' request for costs.  However, the total award of attorneys' fees will be reduced to $414,140.85.

## I.   **JURISDICTION**

Plaintiffs brought this action pursuant to the IDEA, 20

---

[1] Plaintiffs proposed form of order [Doc. No. 60-2] submitted with the present motion seeks a total judgment in the amount of $548,995.53, including approximately $9,290.21 in costs for the law firm of Duane Morris LLP.  However, Plaintiffs' motion and the billing records submitted to the Court reflect a total amount of costs for Duane Morris of only $6,650.21, a difference of approximately $2,640.  The reason for this discrepancy is unclear, but the Court will begin its determination of a reasonable award of fees and costs from the prospective that Plaintiffs' maximum award is $546,355.53, not $548,995.53.  The $546,355.53 Plaintiffs seek includes $531,207.50 in attorneys fees and $15,148.03 in costs for work completed by several legal service providers.

U.S.C. §§ 1400-1491, asserting that Defendants failed to provide H.B. with a free appropriate public education ("FAPE"). Accordingly, the Court exercises jurisdiction over this action pursuant to 20 U.S.C. § 1415(i)(2) and 28 U.S.C. § 1331.

## II.  BACKGROUND

In light of the extensive procedural history of this case and because the Court writes primarily for the parties who are familiar with the background, the Court sets forth below a summary of this case as detailed by the Third Circuit Court of Appeals.  As the Third Circuit explained:

> D.B. and L.B. ("Plaintiffs") challenged Individualized Education Plans ("IEPs") developed for their minor daughter, H.B., who is [an autistic] student in New Jersey's Gloucester Township School District[]. ...
> ... In 2008, Plaintiffs, acting on H.B.'s behalf, filed an amended petition for a due process hearing, challenging [the District's] proposed IEPs for the 2007-2008 and 2008-2009 school years. The ALJ who was assigned to the case concluded that Plaintiffs "have not met their burden of proof of establishing that [a free appropriate public education ("FAPE")] was not provided or that H.B. should be placed in the regular education program for a longer period of time than what was established by [the District]."
> Thereafter, Plaintiffs filed suit in District Court, [before the Honorable Joseph E. Irenas,] challenging the ALJ's decision and asserting claims under the IDEA, the Americans with Disabilities Act, the Rehabilitation Act of 1973, 42 U.S.C. § 1983, and the New Jersey Law Against Discrimination. Their amended complaint also challenged the proposed IEP for the 2009-2010 school year.
> Plaintiffs ultimately moved for summary judgment on their IDEA claim, and Defendants moved for summary judgment on all of Plaintiffs' claims.  On November 17, 2010, the District Court vacated the ALJ's decision and granted summary judgment in favor of

3

> Plaintiffs to the extent their IDEA claim sought
> equitable relief.  The court also ordered Defendants
> to "draft an [IEP] for H.B. in accordance with the
> procedural requirements of the IDEA."  The court noted
> that "[a]ttorneys' fees and related costs are
> available to Plaintiffs to the extent they are the
> prevailing party and make a proper motion before this
> Court for such fees."  To the extent Plaintiffs' IDEA
> claim sought damages, the District Court granted
> summary judgment in Defendants' favor. The court also
> granted Defendants' motion for summary judgment on
> Plaintiffs' § 1983 claim, and dismissed Plaintiffs'
> remaining claims as moot.
>     After Defendants filed [their] appeal, Plaintiffs
> moved for attorneys' fees and costs as prevailing
> parties pursuant to § 1415(i)(3)(B). The District
> Court dismissed that motion without prejudice, and
> granted Plaintiffs leave to "reraise" the motion nunc
> pro tunc "pending the outcome of Defendants' appeal."

D.B. v. Gloucester Twp. School Dist., 489 F. App'x 564, 565 (3d

Cir. 2012) (citations omitted) (hereinafter, "D.B. II").

On July 29, 2012, the Third Circuit affirmed the November

17, 2010 Opinion and Order by the Honorable Joseph E. Irenas

granting Plaintiffs' summary judgment motion on their claim for

equitable relief under the IDEA.  D.B. II, 489 F. App'x at 565-

67.  In accordance with Judge Irenas' April 28, 2011 Order,

Plaintiffs submitted the present motion for attorneys' fees and

costs on August 20, 2012 after Defendants' appeal was resolved.

The case was subsequently reassigned to this Court for resolution

of the present motion.

**III. <u>DISCUSSION</u>**

Pursuant to Section 1415(i)(3)(B) of the IDEA, "a prevailing

party who is the parent of a child with a disability" is entitled

4

to seek attorney's fees and costs.  20 U.S.C. §
1415(i)(3)(B)(i)(I); see also 34 C.F.R. § 300.517(a).  In the
context of awarding attorneys' fees under the IDEA, a party may
be considered a "prevailing party" if the he or she "succeed[s]
on any significant issue in litigation which achieves some of the
benefit the parties sought in bringing the suit." See, e.g.,
Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); J.O. ex rel. C.O.
v. Orange Twp. Bd. of Educ., 287 F.3d 267, 271 (3d Cir. 2002).
To determine if a party was a prevailing party, the Court
utilizes a two-prong test and examines (1) whether plaintiffs
achieved relief; and (2) whether there is a causal connection
between the litigation and the relief from the defendant.  J.O.,
287 F.3d at 271 (citing Wheeler v. Towanda Area Sch. Dist., 950
F.2d 128, 131 (3d Cir. 1991)).  To be eligible for a fee award,
"[a] party need not achieve all of the relief requested nor even
ultimately win the case" so long as the plaintiff achieves some
of the benefit sought in a lawsuit.  J.O., 287 F.3d at 271
(citing Wheeler, 950 F.2d at 131).

    Section 1415(i)(3)(B) requires that any discretionary award
of attorneys' fees under the IDEA be reasonable.  According to
the Third Circuit, "a reasonable fee is [, generally,] one which
is adequate to attract competent counsel, but which do[es] not
produce windfalls to attorneys." Pub. Interest Research Group of
New Jersey, Inc. v. Windall, 51 F.3d 1179, 1185 (3d Cir. 1995)

(internal quotations and citation omitted).  "'[Third Circuit] case law construing what is a reasonable fee applies uniformly to all fee shifting statutes.'"  Damian J. v. School Dist. of Philadelphia, 358 F. App'x 333, 335 (3d Cir. 2009) (citing Goodman v. Pa. Turnpike Comm'n, 293 F.3d 655, 677 (3d Cir. 2002)).  In assessing the reasonableness of an attorneys' fee award under the IDEA, the Court must employ the well recognized "lodestar" method applicable under other fee-shifting statutes which entails multiplying the total number of hours reasonably expended by a reasonable hourly rate.  See Damian J., 358 F. App'x at 335 ("'The starting point for determining the amount of a reasonable fee is the lodestar") (citation omitted); see also Hensley, 461 U.S. at 433.  While the lodestar is "strongly presumed to yield a reasonable fee[,]" Washington v. Phila. Cnty. Ct. of Common Pleas, 89 F.3d 1031, 1035 (3d Cir.1996), "it may still require subsequent adjustment."  UAW Local 259 Soc. Sec. Dep't v. Metro Auto Ctr., 501 F.3d 283, 290 (3d Cir. 2007).

It is the "party seeking attorney fees [that] bears the ultimate burden of showing that its requested hourly rates and the hours it claims are reasonable."  Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 703 n.5 (3d Cir. 2005) (citation omitted).  In order to meet this burden, the party seeking fees is initially required to submit evidence supporting the hours worked and the rates claimed.  Id.  To the extent the

opposing party seeks to challenge the fees sought, "the opposing party must ... object 'with sufficient specificity' to the request." Id.  Where the opposing party raises objections, "the party requesting fees must demonstrate to the satisfaction of the court that its fee request is reasonable." Id.

"If the party opposing the fee petition meets its 'burden of proving that an adjustment is necessary,' ... the court has wide discretion to adjust the attorneys' fee for a variety of reasons such as inadequate documentation of hours spent, reasonableness of hours expended or duplication of efforts." Apple Corps. Ltd. v. Int'l Collectors Soc., 25 F. Supp. 2d 480, 485 (D.N.J. 1998) (citing Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990); Ursic v. Bethlehem Mines, 719 F.2d 670, 677 (3d Cir. 1983)).  The Court, however, is not permitted to "decrease a fee award based on factors not raised by the adverse party." Rode, 892 F.2d at 1183; see also McDonald v. McCarthy, 966 F.2d 112, 119 (3d Cir. 1992) (holding that a district court "may not, sua sponte, reduce the award requested unless such order is based on the court's personal knowledge as to the time expended on the case").

IV. **ANALYSIS**

A. **Prevailing Party Status**

As a threshold matter, the District challenges whether Plaintiffs qualify as prevailing parties in this matter such that

an award of attorneys' fees is appropriate.  In the view of the
Defendant District, Judge Irenas' November 17, 2010 Opinion and
Order "essentially ordered that a new IEP meeting be conducted"
but "did not find that the IEP created for the minor plaintiff
violated the IDEA or any other statute, law or regulation."  (Br.
in Opp'n to Pls.' Mot. for Attys' Fees and Costs [Doc. No. 64]
(hereinafter, "Defs.' Opp'n"), 10.)  Defendants contend that
Judge Irenas simply "ruled that the IEP was not created in
accordance with the procedures established in the IDEA" and
declined to "rule on what the contents of the new IEP should be
or provide any directives" in that regard.  (Id. at 11.)  For the
District, the defining aspect of Judge Irenas' Opinion which
purportedly prohibits an award of attorneys' fees here is the
absence of any rulings regarding whether the content of the
disputed IEPs was appropriate.  (Id.)  The District characterizes
Judge Irenas' ruling as one which "directed [the District] to
have a new IEP meeting[,]" and since a new IEP meeting is
required by law each spring, the District was not ordered to do
anything different than it was already doing prior to, and as a
result of, the litigation.  (Id. at 12, 14) (citing Wheeler, 950
F.2d at 132).

     The District's argument that Plaintiffs are not prevailing
parties in this matter is wholly without merit.  In opposing
Plaintiffs' motion, the District substantially mischaracterizes

8

the nature of Judge Irenas' prior ruling.

As set forth supra, Plaintiffs may qualify as prevailing parties if they achieved relief on any of their claims and if there was a causal connection between the litigation and that relief. J.O., 287 F.3d at 271 (citing Wheeler, 950 F.2d at 131). A liberal standard applies when assessing the first prong of whether Plaintiffs achieved relief on any of their claims, and the Court must make a "commonsense comparison between the relief sought and obtained." Wheeler, 950 F.2d at 131. Plaintiffs need not have achieved all of their requested relief to qualify as prevailing parties so long as they achieve some of the benefit sought in the lawsuit. Id. To demonstrate the requisite casual connection between the litigation and the relief achieved as delineated in the second prong, Plaintiffs must establish that the litigation "changed the legal relations of the parties such that defendants were legally compelled to grant relief[.]" Wheeler, 950 F.2d at 132; see also Farrar v. Hobby, 506 U.S. 103, 111–12 (1992) (explaining "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying th defendant's behavior in a way that directly benefits the plaintiff.") So long as the defendant's behavior is modified in a manner that directly benefits the plaintiff, an award of fees is appropriate and "the degree of the plaintiff's overall success goes [only] to

9

the reasonableness of the award ... not to [its] availability[.]"
Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S.
782, 792-93 (1989).

In this case, a commonsense comparison between the relief
sought and that obtained demonstrates that Plaintiffs clearly
achieved at least some benefit from the lawsuit.  Specifically,
as Judge Irenas noted, Plaintiffs sought "injunctive relief ...
requir[ing] the ... District to, amongst other things, create a
new Individualized Education Program ... for H.B."  D.B. ex rel.
H.B. v. Gloucester Tp. School Dist., 751 F. Supp. 2d 764, 767
(D.N.J. 2010) (hereinafter, "D.B. I").  In challenging the 2007-
2008 IEP, the 2008-2009 IEP, and the 2009-2010 IEP, Plaintiffs
argued that the District predetermined H.B.'s placement and
thereby committed a procedural violation of the IDEA because the
District denied Plaintiffs, as H.B.'s parents, a meaningful
opportunity to participate in the IEP decision making process as
required under the Act.  Id. at 771.  Judge Irenas cited
substantial authority in support of Plaintiffs' position and
recognized that "[p]redetermination of an IEP can be grounds for
finding a violation of the IDEA, in particular because
predetermination can serve to exclude parents from meaningfully
participating in the decision making process."  Id.

After a thorough and careful review of the administrative
record and the evidence before him, Judge Irenas concluded that

> Plaintiffs have shown that for each of the IEPs
> before the Court, the School District had come to
> definitive conclusions on H.B.'s placement without
> parental input, failed to incorporate any
> suggestions of the parents or discuss with the
> parents the prospective placements, and in some
> instances even failed to listen to the concerns of
> the parents.  It is clear from the evidence before
> the Court that the IEPs were predetermined, and
> *therefore the School District denied the parents any
> meaningful participation in the development of the
> IEPs in violation of IDEA*.

Id. at 772 (emphasis added).  Based on the explicit finding that

the District committed a procedural violation of the IDEA and

that Plaintiffs were denied their statutory right to meaningfully

participate in the IEP process, Judge Irenas granted Plaintiffs'

First Claim for Relief under the IDEA seeking equitable relief,

vacated the administrative law judge's decision and order, and

ordered the District "to draft an IEP for H.B. in accordance with

the procedural requirements of the IDEA."  Id. at 773.  From the

outset, Plaintiffs clearly sought to compel the District to

create a new IEP for H.B. and Judge Irenas ordered the District

to do precisely that .... draft an IEP in accordance with the

procedural requirements of the IDEA – i.e., without

predetermining H.B.'s placement and giving Plaintiffs a

meaningfully opportunity to participate.  Accordingly, Plaintiffs

have satisfied the first prong of the prevailing party analysis

because they achieved at least some of the relief they sought.

It is also apparent that a causal connection exists here

between the litigation and the relief achieved.  Prior to Judge

Irenas' November 17, 2010 ruling, the District repeatedly
predetermined H.B.'s placement status prior to engaging in the
IEP process — putting the proverbial cart before the horse and
making final placement decisions before creating the IEP.  Id. at
771-772.   As Judge IRenas explained, however, "a student's
placement must be based on the IEP, and not the other way
around."  Id. at 771.   In each instance, the District denied
Plaintiffs any meaningful participation in developing their
daughter's IEPs, a statutory right created by the IDEA.  Id. at
772.   In vacating the administrative law judge's decision and
order and ordering the District to draft an IEP in accordance
with the procedural requirements of the IDEA, Judge Irenas
granted Plaintiffs actual relief on the merits of their IDEA
claim which materially altered the legal relationship between
Plaintiffs and the District.

Judge Irenas' ruling modified the District's behavior in a
significant way.  Rather than basing H.B.'s IEP on a
predetermined placement selected by the District without parental
input as it had in the 2007-2008, 2008-2009, and 2009-2010 school
years, Judge Irenas directed the District to properly engage in
the IEP process by working with Plaintiffs to develop an IEP for
H.B. that determined her placement and provided Plaintiffs
meaningful participation in the process.  This ruling had a clear
and direct benefit for Plaintiffs who, until that time, had been

utterly frozen out of the IEP process such that they were unable
to offer input or have discussions with District representatives,
their alternative placement suggestions were rebuffed, and their
questions were "literally met with only silence." Id. at 771-72.
Judge Irenas' ruling thereby modified the District behavior and
directly benefitted Plaintiffs, who, for the first time, were
given a chance at meaningful participation in the process.

Accordingly, the Court finds here that Plaintiffs qualify as
prevailing parties and are entitled to an award of attorneys
fees.  For similar reasons, the Court also rejects the District's
alternative argument that any relief awarded to Plaintiffs was de
minimus.  (See Defs.' Opp'n 24-25.)  Here again, the District
mischaracterizes the relief award by Judge Irenas as simply
ordering a new IEP meeting be held as already required annually
by law.  As set forth more fully above, Judge Irenas' ruling
provided substantially more relief than ordering a new IEP
meeting.  It provided Plaintiffs with their first chance to have
meaningful participation in the IEP process for H.B. where the
District had previously prevented them from doing so in violation
of the IDEA.

**B.   Whether Any Reduction in Fees is Proper**

Plaintiffs contend that the Court cannot reduce their
requested attorneys' fees because the express language of 20
U.S.C. § 1415(i)(3)(G) prohibits such a reduction.  (Pls.' Mem.

13

of Law in Supp. of Mot. for Award of Attys' Fees and Costs [Doc.
No. 60-1] (hereinafter, "Pls.' Mem."), 12.)   Section
1415(i)(3)(G) provides in pertinent part

> The provisions of subparagraph F [factors for
> reduction of fees] shall not apply in any action or
> proceeding if the court finds that the State or local
> educational agency unreasonably protracted the final
> resolution of the action or proceeding or there was a
> violation of this Section.

20 U.S.C. § 1415(i)(3)(G).  Plaintiffs argue, without citation to

any controlling or even persuasive authority, that because Judge

Irenas found that the District committed a procedural violation

of Section 1415(f)(3)(E)(ii) regarding impeding the rights of

parents to participate in the decision-making process, that

violation precludes the District from seeking to reduce

Plaintiffs' attorneys' fees.  (Pls.' Mem. 12-13.)  The Court's

independent review of the case law does not support Plaintiffs'

interpretation of the IDEA in this respect.   In the absence of at

least some persuasive, if not binding, authority on this point,

the Court must reject Plaintiffs' argument and will consider the

District's objections seeking to reduce the total fees in this

case.[2]

---

[2] The Court also summarily rejects Plaintiffs' argument that
a reduction of fees is improper here because the Court could find
that the District unreasonably protracted the ultimate resolution
of this litigation.  (Pls.' Mem. 14.)  Other than highlighting
that the District appealed Judge Irenas' November 17, 2010 ruling
to the Third Circuit, which it was well within its rights to do,
Plaintiffs point to absolutely no evidence from which the Court
could conclude the District unreasonably protracted resolution of

### C.    Breakdown of Fee Award Sought by Plaintiffs

Plaintiffs seeks an award of attorneys' fees totaling $531,207.50.  (Pls.' Mem. 14.)  The award requested by Plaintiffs seeks fees for services furnished by four different legal service providers on this matter:

> (1)  Duane Morris LLP — $185,756.00;
> (2)  WolfBlock LLP — $205,762.50;
> (3)  The Public Interest Law Center of Philadelphia ("the Law Center") — $112,194.00; and
> (4)  Reisman Carolla Gran LLP ("Reisman") — $27,495.00.

(Id.)  Plaintiffs also seek to recover $15,148.03 in costs between Duane Morris — $6,650.21; WolfBlock — $7,113.22; and the Law Center — $1,384.60.  (Id.)

### D.    The District's Objections to Plaintiffs' Fees

#### 1.   The Requested Hourly Rates are Unreasonable

In seeking an award of attorneys' fees, Plaintiffs request reimbursement at the following hourly rates: $390 per hour for attorneys from the Law Center and Reisman; between $160 and $325 per hour for various attorneys from WolfBlock; and between $350 and $410 per hour for various attorneys from Duane Morris.  The District challenges these asserted rates and argues that Plaintiffs have made no showing that these asserted rates are reasonable for this particular type of case, Plaintiffs made no effort to prove these rates meet those of an adequately

---

this case.

15

experience attorney in the area of education law, and Plaintiffs did not submit any additional support for these fees beyond attorney affidavits.  (Defs.' Opp'n 19.)

In IDEA cases, a reasonable hourly rate is calculated according to "market rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."  20 U.S.C. § 1415(i)(3)(C).  A similar analysis is generally applied in other areas of federal law where an award of attorneys' fees to the prevailing party is authorized. See, e.g., Blum v. Stenson, 465 U.S. 886, 895-96 n. 11 (1984); Washington, 89 F.3d at 1035; Student Pub. Interest Research Group, Inc. v. AT & T Bell Labs., 842 F.2d 1436, 1448 (3d Cir. 1988) ("PIRG").  Thus, the Court may look to these cases to determine the rate to be awarded in an IDEA case.

Plaintiffs, as the prevailing party, must establishing by way of satisfactory evidence, "in addition to [the] attorney's own affidavits, that the requested hourly rates meet this standard."  Washington, 89 F.3d at 1035 (citations and internal quotations omitted).  As the Third Circuit has previously indicated, the prevailing party has the burden of demonstrating "'the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity[.]'"  Id. at 1036 (citation omitted).  "This burden is normally addressed by submitting the affidavits of other attorneys in the

16

relevant legal community, attesting to the range of prevailing rates charged by attorneys with similar skill and experience." S.D. v. Manville Bd. of Educ., 989 F. Supp. 649, 656 (D.N.J. 1998).

If the prevailing party satisfies its initial burden, the opponent may challenge the proffered hourly rate but only with record evidence. Smith v. Philadelphia Hous. Auth., 107 F.3d 223, 225 (3d Cir. 1997). If the opponent fails to do so, the district court may not reduce the requested rate. Washington, 89 F.3d at 1036. "The Third Circuit has been explicit about the opponent's burden stating: '[i]t is not enough merely to contest the claimed hourly rate; rather, [the opponent] must submit evidence of a different hourly rate.'" T.B. v. Mount Laurel Bd. of Educ., No. 09-4780, 2012 WL 1079088, at *4 (D.N.J. Mar. 30, 2012) (citing Smith, 107 F.3d at 225) (emphasis omitted).

With respect to the $390 hourly rate charged by attorneys (Judith Gran and Barbara Ransom) at the Law Center and at Reisman, the Court finds Plaintiffs have met their burden of demonstrating that $390 per hour is reasonable in light of the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity. Plaintiffs submitted the affidavit of Jennifer R. Clarke, Esquire, the Executive Director at the Law Center, an attorney who did not perform any work in this matter, verifying that the rate of $390

per hour is more than reasonable and substantially less that the rates charged in southern New Jersey for work of comparable complexity in light of the extensive experience of these attorneys, ranging from about twenty to thirty years of practice in multiple areas of education law.

The Court similarly finds that the rates charged for attorneys at Duane Morris and WolfBlock are also reasonable, based on the representations in the Clarke Affidavit.  Although the Clarke Affidavit speaks to the reasonable rates for attorneys at the Law Center, it also serves to substantiate the rates charged by WolfBlock attorneys, all of which are substantially less than $390 per hour, as well as the rates charged by Duane Morris attorneys which average out to $381 per hour.

Having found that the hourly rates charged are reasonable in this instance and supported by the Clarke Affidavit, the Court declines to reduce these hourly rates despite the District objections.  The District clearly contests these hourly rates, but that is simply not enough.  See T.B., 2012 WL 1079088, at *4 (citing Smith, 107 F.3d at 225).  In order for the Court to reduce these hourly rates, the District was required to submit evidence in support of a different hourly rate.  The District has failed to submit any such evidence to the Court and therefore, the rates charged by Plaintiffs' attorneys will not be reduced.

18

2.   *Hours Expended are Unreasonable*[3]

In fashioning an award of attorneys' fees, the "prevailing party is not automatically entitled to compensation for all the time its attorneys spent working on the case[.]" Interfaith Cmty. Org., 426 F.3d at 711.  "Hours that would not generally be billed to one's own client are not properly billed to an adversary." Pub. Interest Research Group, 51 F.3d at 1188.  As a result, the Court must determine "whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." Interfaith Cmty. Org., 426 F.3d at 711 (internal quotations and citation omitted).  In reviewing these charges, the Court cannot reduce an award *sua sponte* but "only in response to specific objections made by the opposing party." Id.

In support of its contention that the hours expended in this matter by Plaintiffs' attorney are unreasonable, the District

---

[3] Initially, the District objects to any time billed by Plaintiffs' attorneys for "attendance at IEP meetings and discussions regarding IEP meetings" on the basis that this time is outside the scope of this litigation and is impermissible under 20 U.S.C. § 1415(i)(3)(D)(ii).  (Defs.' Opp'n 17.)  That Section specifies that "[a]ttorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action, or, at the discretion of the State, for a mediation described in subsection (e)."  However, the District fails to identify any specific time entries for IEP meetings which should be disallowed on the basis that they were not the result of administrative or judicial action, and therefore no time will be reduced on that basis.

submits the Certification of James P. Schratz [Doc. No. 64-5] and relies on the Schratz Certification as a form of an expert report to attack Plaintiffs' billing records and reduce Plaintiffs' award of attorneys' fees.  According to this Certification, Schratz is a licensed attorney who conducts legal audits for law firms, government entities, private clients, insurance companies, and corporations throughout the country, and he has conducted approximately 900 legal fee audits over the last sixteen years. (Schratz Cert. ¶¶ 1, 4.)  The District retained Schratz for the purpose of reviewing Plaintiffs' attorneys' invoices and conducting an audit of the billing records from August 2007 through November 2010.[4]  (Id. ¶¶ 23-24.)

    Schratz raises four primary issues related to the billing records submitted by Plaintiffs' attorneys in support of the fee request here: (1) problems inherent in block billing, (2) vagueness of the entries, (3) overstaffing, and (4) overbilling. With respect to block billing and vagueness of the entries,

---

    [4] The Court notes that Plaintiffs' attorneys continued to expend time on this matter well beyond November 2010 as reflected in the billing records submitted to the Court.  Accordingly, Schratz's assessment of Plaintiffs' fees does not represent a complete picture of the fees sought in this case, and essentially leaves unchallenged all time billed by Plaintiffs' attorneys' after November 2010.  Because the Court is not permitted to "decrease a fee award based on factors not raised by the adverse party[,]" see Rode, 892 F.2d at 1183, the Court will permit recovery for virtually all time billed from December 1, 2010, except where specific entries on challenged on another independent basis.

Schratz's Certification and the Court's independent review of the billing records submitted by Plaintiffs reflect that all of Plaintiffs' attorneys engaged in block billing in this case and that the records are replete with vague entries.[5]  However, the instances of block billing and vague entries were significantly more prominent in the records of WolfBlock and Duane Morris.  The use of block billing and the rampant presence of vague entries in the billing records submitted to the Court make it virtually impossible for the Court to fairly and accurately assess the reasonableness of the hours actually expended on this matter since its inception in 2007.

In response to the Schratz Certification, Plaintiffs make no substantive arguments in support of the challenged hours and practices.  Instead, Plaintiffs argue that the District's counsel engaged in similar conduct such that Plaintiffs' attorneys should not be faulted for the manner in which they billed their hours when defense counsel billed the District in much the same fashion.  (Pls.' Reply [Doc. No. 65] 14-17.)  This argument is not sufficient to satisfy Plaintiffs' burden of demonstrating the reasonableness of the hours expended on this matter.  Simply

---

[5] Examples of vauge entries included in the billing records are "Review documents", "Prepare for trial"; "Trial Preparation"; "Various follow-ups"; "Conference calls re: matter"; "Strategy meeting"; "IEP meeting issues"; "Settlement follow ups"; "Continue work on trial prep"; "conference call"; "Research re: strategy"; "Reading email from co-counsel"; "Work on Letters and matters re: discovery".

pointing the finger across the table and objecting because "they did it too!" is not a legal argument which the Court can give an credence to.  Accordingly, the Court will adopt Schratz's recommendation that WolfBlock's fees be reduced by eight percent (8%) for the block billing and vague entries; that Duane Morris' fees be reduced by five percent (5%) for the same; and that neither the Law Center nor Reisman will have their fees reduced on this basis.  (Schratz Cert. ¶¶ 27(1)-27(3).)

On the issue of overstaffing, the Schratz Certification demonstrates that for seventeen (17) different proceedings, at least two and sometimes three attorneys were present.  (Schratz Cert. ¶29(1).)  Schratz proposes reducing the duplicative charges for these fees by $30,768.75 for WolfBlock, $2,549.00 for Duane Morris, $10,471.50 for the Law Center and $1,033.50.  (Id.; See also Ex. 9 to Schratz Cert. [Doc. No. 64-20] 1.)  Schratz arrived at these specific reductions by disallowing the fees charged for the lower billing attorney's rate where the attorneys are from the same provider, or by disallowing fifty percent (50%) of each attorney's fee where the attorneys are from different providers; or where two attorney from one provider are present and the third attorney was from a different provider, by disallowing the fees charged for the lower billing attorney between the two common attorneys and then disallowing 50% of each remaining attorney's fees.  (Schratz Cert. ¶ 29(1).)

Again, beyond pointing the finger back at defense counsel Plaintiffs have failed to submit any evidence justifying that these otherwise duplicative charges for time billed by multiple attorneys present at 17 separate proceedings is warranted.  It is Plaintiffs' burden to demonstrate the reasonableness of the hours expended once Defendant has objected.  Plaintiffs' have not done so here, and the Court therefore adopts Schratz recommended reductions for multiple appearances by counsel.

Schratz has also convinced the Court that this overstaffing of Plaintiffs' case resulted in a significant amount of time billed for intra-office conferencing whereby Plaintiffs' attorneys were discussing the matter amongst themselves, beyond what the Court would expect for a matter of this nature and that reflected in other cases Schratz has audited.  (Schratz Cert. ¶ 29(2).)  Moreover, to the extent these time entries were part of the attorneys' block billing, it is extremely difficult for the Court to discern precisely how much of this conferencing was necessary for the litigation strategy.  In light of these difficulties, the Court again adopts Schratz's across the board percentage reductions of 8% for WolfBlock, 3% for Duane Morris, 5% for the Law Center, and 5% for Reisman.  (Id.)

Moreover, the Schratz Certification further demonstrates that WolfBlock and Duane Morris engaged in a significant amount of overbilling and the Court adopts Schratz's recommendation to

reduce their fees by an additional 10% each as a result of the unreasonable amount of hours billed for what appear to be otherwise routine tasks.

In summary, with respect to those fees reviewed by Schratz in the audit, the Court awards $129,495.38 in fees to WolfBlock; $95,349.19 in fees to Duane Morris; $96,636.38 in fees to the Law Center, and $13,838.18 in fees to Reisman.  (See Ex. 9 to Schratz Cert. [Doc. No. 64-20] 1.)  This results in a total fee award of $335,319.13 for all time billed prior to November of 2010. However, because Duane Morris submitted billing records demonstrating an additional $66,927.50 worth of fees for time billed after that date which remains unchallenged by the District, the Court also awards $66,927.50 to Duane Morris for a total award of $162,276.09.  Similarly, Reisman also continued to bill time on this matter after November of 2010 and submitted billing records indicating additional fees in the amount of $11,895.00, which Defendants have not challenged.  Accordingly, the Court awards Reisman an additional $11,895.00, for a total award to Reisman of $25,733.00.

### 3.   Costs for Experts are Not Recoverable

The District argues that the list of costs provided by Duane Morris seeks reimbursement in the amount of $3,000 for an expert witness fee paid to Dr. Dana Henning, along with other associated expert costs.  (Defs.'s Opp'n 22.)  The District is correct on

24

this point.  The Third Circuit has repeatedly explained that, consistent with United States Supreme Court precedent, "the IDEA does not permit prevailing parents to recover expert fees."  <u>A.S. ex rel. V.S. v. Colts Neck Bd. of Educ.</u>, 190 F. App'x 140, 142 n.2 (3d Cir. 2006) (citing Arlington Central Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291 (2006)); see also A.W. v. East Orange Bd. of Educ., 248 F. App'x 363, 365 (3d Cir. 2007) ("the fee-shifting provision [of the IDEA] does not authorize a prevailing parent to recover fees for services rendered by an expert educational consultant in IDEA proceedings.") (citing Arlington, 548 U.S. 291).

Accordingly, Duane Morris's attempt to recover costs in the amount of $3,000 for the expert witness fee paid to Dr. Dana Henning is denied.

**E.    Fee Award**

For the reasons set forth above, the Court adopts the Summary of Findings and Recommendations attached as Exhibit 9 to the Schratz Certification with respect to attorneys' fees and awards attorneys' fees as follows in this case:

| Legal Service Provider | Total Fee Sought | Total Fee Awarded |
|---|---|---|
| WolfBlock LLP | $205,762.50 | $129,495.38 |
| Duane Morris LLP | $185,756.00 | $162,276.09 |
| The Public Interest Law Center of Philadelphia | $112,194.00 | $96,636.38 |

| Reisman Carolla Gran LLP | $27,495.00 | $25,733.00 |

The total award of all attorneys' fees requested in this case is therefore, $414,140.85.  At this time, the Court denies without prejudice Plaintiffs' motion to the extent it seeks costs in this action.  The Court's review of the billing records as to the costs incurred by the four legal service providers involved demonstrates that these records fail to precisely set forth each item and the cost incurred therefore, in a manner which the Court an readily understand and appreciate in order to enter an accurate award of costs at this time.  Plaintiffs are hereby granted leave to file a renewed motion for costs which properly complies with the detailed requirements of Local Civil Rule 54.1.

**V.   <u>CONCLUSION</u>**

Accordingly, the Court grants in part and denies without prejudice in part Plaintiffs' motion [Doc. No. 60] for attorneys' fees and costs but reduces the total award as set forth herein.  Defendants shall reimburse Plaintiffs' in the total amount of $414,140.85 as set forth above.  An Order consistent with this Opinion will be entered.


Dated: <u>March 28, 2013</u>                    <u>s/ Noel L. Hillman</u>
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

26